THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:09-CV-120-FL

CECELIA L. SPENCER,                    )
                                       )
       Plaintiff/Claimant,             )
                                       )
              v.                       )       **MEMORANDUM AND**
                                       )       **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner        )
of Social Security,                    )
                                       )
       Defendant.                      )

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Cecelia L. Spencer ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 9 November 2005, alleging disability beginning 31 May 2002. (R. 17, 328-30). Both claims were denied initially and upon reconsideration.[1]  (R. 314-16, 322, 699-702). A hearing before the

[1] Claimant filed previous applications for a period of disability, DIB and SSI on 11 December 2003. (R. 75-77). Both claims were denied initially and upon reconsideration. (R. 53-58, 61-62). An ALJ issued an unfavorable decision on 7 October 2005. (R. 303-313). On 11 January 2006, the

Administrative Law Judge ("ALJ") was held on 12 October 2007, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 27, 35-52). On 4 February 2008, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-26). Claimant then requested a review of the ALJ's decision by the Appeals Council, and submitted additional evidence as part of her request (R. 706-73). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 20 May 2009. (R. 10-13). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

---

Appeals Council denied Claimant's request for review. (R. 29-31).

Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily

3

living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper assessment of Claimant's residual functional capacity ("RFC"); (3) failure to pose a hypothetical that adequately reflected Claimant's impairments; and (4) failure to properly develop the record.[2] Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer

---

[2] Claimant filed a supplemental memorandum of law on 16 March 2010, advising the Court of a favorable administrative decision by ALJ Larry Auerbach dated 12 February 2010 finding a disability onset date of 3 October 2007. [DE-22]. As the onset date is prior to 4 February 2008, the date of the unfavorable decision presently before the Court, Claimant requests the Commissioner reverse its decision and award benefits with an onset date of 3 October 2007, or, in the alternative, that the Court remand the case with instructions to the Commissioner to obtain a medical expert opinion as to the onset of Claimant's disability. [DE-22 at 2]. On 29 March 2010, Defendant filed a reply and informed the Court that on 26 March 2010, the Appeals Council had vacated ALJ Auerbach's 12 February 2010 decision. [DE-23]. As the 2010 decision is under further administrative review, it is not a final decision of the Commissioner at this time. *See* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a); *see also* 20 C.F.R. §§ 404.981, 416.1481. Moreover, upon becoming final, the new decision will have no bearing on the 2008 decision now pending before this Court as it will be limited to a period not within the jurisdiction of this Court. *See* HALLEX I-2-8-16, Administrative Law Judge Decision When a Prior Claim is Pending Judicial Review, available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-16.html (explaining when a case involving a subsequent application is being adjudicated while a civil action is pending on a prior claim, the ALJ must limit his consideration to the period following the period undergoing judicial review); *see also* Notice of Appeals Council Action [DE-23.2 at 2] (citing HALLEX I-2-8-16).

4

engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, depression, degenerative disc disease, osteoarthritis and carpal tunnel syndrome. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace and has experienced one to two episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[3] and is limited to simple, routine, repetitive tasks in a non-production environment. (R. 23). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 24). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old and unemployed. (R. 40). Claimant received her associate of arts degree. (R. 40). Claimant was last employed as a nursing assistant. (R. 41).

Claimant testified that she is unable to work due to constant pain associated with her neck, back, knees and the right side of her body. (R. 42, 44). In addition to taking medications for her pain, most of which cause drowsiness, Claimant has tried physical therapy, traction, heat therapy, a TENS unit and spinal injections. (R. 42, 44, 47). Claimant reported that she wears a back brace, neck brace and right wrist brace and on occasion, uses a prescribed cane. (R. 43, 48). Claimant testified that there is no particular position that helps relieve her pain and that her pain is aggravated by cold weather. (R. 44, 47). Claimant testified further to experiencing depression and anxiety attacks. (R. 43, 46). Claimant explained she feels worthless, is stressed often, easily upset, sleeps poorly and experiences memory difficulties. (R. 43).

Given her impairments, Claimant estimated that she is able to walk approximately 10 minutes, stand for 15 minutes and sit for 30 minutes and can lift no more than 10 pounds. (R. 45). Claimant has difficulty gripping or grasping objects with her right hand. (R. 47). Claimant testified that she "tr[ies] to exercise a little bit." (R. 44). Claimant attends church twice a month, shops for groceries on occasion and performs no household chores with the exception of making her bed. (R. 46).

## III. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler testified as a VE at the administrative hearing. (R. 48-51). After the VE's testimony regarding Claimant's past work experience, the ALJ posed the following

6

hypothetical: "[A]ssume a hypothetical individual the same age, education and work background as that of the claimant. . . . [who] is limited to light work . . . [and] to perform[ing] the simple routine repetitive nonproduction work. Are there [positions] that the hypothetical individual could perform?" (R. 49). The VE responded the individual could perform work as an information clerk (DOT# 237.367-018) and shipping and receiving grader (DOT# 222.387-074).[4] (R. 49). The VE testified further that the hypothetical individual could perform the following sedentary positions: surveillance system monitor (DOT# 379.367-010), order clerk (DOT# 209.567-014) and call out operator (DOT# 237.367-014). (R. 50). Finally, the ALJ asked the VE to assume whether the hypothetical individual could perform any of the above jobs if the individual has difficulty grasping with and using her dominant right upper extremity, drops items frequently, and requires a cane to ambulate, to which the VE responded in the affirmative. (R. 50).

Claimant's attorney then inquired as to whether the hypothetical individual would be capable of performing either the light or sedentary positions identified by the VE if the individual was limited to "only occasional use of [] the dominant extremity. . . . simple routine, repetitive tasks, nonproduction, sit/stand option, occasional bend[ing], stoop[ing] and squat[ing] and [] occasional interaction with the public." (R. 50-51). The VE responded in the negative and stated further that the individual would not be able to perform any light or sedentary positions as defined by the DOT. (R. 51).

---

[4] The VE testified further that the hypothetical individual could perform an unidentified job assigned DOT# 207.685-4014, a non-existent number. (R. 49). Defendant clarified, however, that the third position was that of a photo-copying-machine operator (DOT# 207.685-014). Def.'s Mem. at 14.

## DISCUSSION

### I.      The additional evidence submitted to the Appeals Council is not material.

The Appeals Council incorporated the following additional evidence into the record: (1)

progress notes from Josiah Duke, M.D., of Orthopaedics East, Inc., dated 17 June 2008, 29 July

2008 and 25 September 2008 (R. 709, 768-69); (2) progress notes from Nadir Attiah, M.D., of

East Carolina University ("ECU") Physicians, and Claimant's treating psychiatrist, dated 10 July

2008, 21 August 2008 and 18 September 2008 (R. 710-721); (3) medical records from Pitt

County Memorial Hospital, Pain Management Center ("PMC") dated 28 August 2008,[5] 19

December 2008, 26 January 2009 (R. 724-67); and (4) medical records from Pungo District

Hospital dated 14 December 2008 and 1 February 2009. (R. 771-73). Although the Appeals

Council discounted the additional evidence (R. 3-4), the Court must review this evidence in

determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y,*

*Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council

incorporates additional evidence into the administrative record, the reviewing court must "review

the record as a whole, including the new evidence, in order to determine whether substantial

evidence supports the [ALJ's] findings"). However, Claimant bears the burden of demonstrating

that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already

in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3)

relates to the claimant's medical condition as it existed at the time of the hearing. 20 C.F.R. §§

404.970(b), 416.1470(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v.*

*Astrue*, No. 2:07-CV-30-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3

---

[5] A duplicate of the 28 August 2009 progress report appears in R. 754-66.

8

(E.D.N.C. Aug. 29, 2008). In this case, the relevant time period extends from 9 November 2005 (Claimant's alleged disability onset date) to 4 February 2008 (the date of the ALJ's decision).

As an initial matter, the Court notes that Claimant has not explained the relevance of any of the above evidence. The Court also finds the additional evidence immaterial as it would not have changed the outcome of the ALJ's decision. Dr. Duke's records indicate that Claimant underwent carpal tunnel release for her right wrist in June 2008. (R. 768). A follow-up visit on 25 September 2008 indicates that Claimant was doing "very well," her symptoms of pain, numbness and tingling had resolved "almost completely," and she had "full range of motion". (R. 709). Dr. Duke's report provided no limitations stating only "[a]ctivities as tolerated." (R. 709). No information is contained within these records relating Dr. Duke's findings to Claimant's condition during the relevant time period. Moreover, this evidence indicates a medical improvement as to Claimant's carpal tunnel syndrome.

In Dr. Attiah's recent progress notes, Dr. Attiah acknowledged Claimant's continued complaints of multiple stressors, depression, pain and poor sleep and concentration; however, he noted in treating Claimant for the past one and in a half years, the "current med[ication] combination regimen is the only one that worked well for her." (R. 711, 716, 719). Claimant's functioning impairment level was described as mild to moderate. (R. 710, 718). Mental status examinations revealed Claimant's orientation was "intact x 4," her mood "dysthymic," and her thought-process "goal-directed." (R. 711, 715, 719). Dr. Attiah assigned Claimant a Global Assessment of Functioning ("GAF")[6] score between 55 and 60, respectively (R. 712, 716, 720), a

---

[6] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

9

range indicating "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." DSM-IV at 32 (bold typeface omitted). Despite several referrals for psychotherapy, Dr. Attiah noted Claimant's refusal to participate. (R. 713, 716, 720).

Dr. Attiah's recent medical records are merely restatements of Claimant's symptoms as contained in reports submitted to the ALJ. For example, ECU Physicians records before the ALJ indicate Claimant generally complained of depression, poor concentration and multiple stressors despite compliance with medications and therapy sessions. (R. 22, 641, 645, 649, 653, 675). The records indicate further that Claimant's GAF score was generally in the range of 55-60 (R. 507, 511, 523, 579, 583, 598, 611, 615, 643, 647, 651, 655, 659, 665, 669, 673), her functioning impairment level was described as mild to moderate (R. 642, 646, 654, 658, 663, 667, 671), and her orientation, mood and thought process were consistently described as "intact x 4," dysthymic, and goal-directed, respectively (R. 642, 646, 658, 664, 668, 672). (R. 21 ¶ 3).

The recent progress notes from the Pain Management Center noted the following upon physical examination: lumbar spine tenderness, multiple trigger points positive for fibromyalgia, left shoulder pain with "[r]ange of [m]otion: 50%-99% loss," and a "tight trapezius with limited flexion extension and side turn," for which Claimant was given a trigger point injection. (R. 732, 738, 746). It was noted that Claimant reported pain levels of either 6 or 7 on a scale of one to ten and was using a TENS unit which was "helping some." (R. 724, 734, 739). Claimant was instructed to stop wearing her back brace, begin back exercises and continue walking three times a week. (R. 724, 732, 734, 738-39). Medical assessments included left rotator cuff syndrome, cervicalgia, and fibromyalgia; however, Claimant's neck problems and fibromyalgia were described as well controlled. (R. 724, 732, 734, 738).

10

With the exception of the left shoulder pain, however, the Pain Management Center evidence is also cumulative of evidence presented before the ALJ, which included diagnoses of chronic low back pain, neck pain with degenerative disk disease, chronic right arm pain, osteoarthritis of the knees and fibromyalgia (R. 21, 539, 542, 548, 555, 635, 682-83, 685), pain levels ranging from 5 to 7 (R. 501, 537, 625, 633, 683, 687) and instructions to perform aerobic exercise daily, such as walking thirty minutes a day (R. 627). As for the evidence documenting Claimant's left shoulder pain, the Court found no discussion of this impairment in the evidence appearing before the ALJ. In fact, discussion of Claimant's left shoulder pain first appears in the January 2009 progress note from the Pain Management Center and then again in the February 2009 MRI from Pungo District Hospital which revealed "probable tendinopathy with likely bursal sided fraying of the supraspinatus tendon," and "mild AC joint degenerative change" (R. 771). As mentioned previously, Claimant provides no analysis of the additional evidence within her arguments and in fact, never discusses her left shoulder pain. Accordingly, the left shoulder impairment appears to be a later-acquired impairment occurring subsequent to the ALJ's decision, which "simply has no bearing on whether [Claimant] was disabled during the relevant period of time." *Rhodes v. Barnhart*, No. 1:04-CV-22, 2005 U.S. Dist. LEXIS 42876, at *31 (W.D.N.C. Mar. 30, 2005); *see Eason*, 2008 U.S. Dist. LEXIS 66820, at *9, 2008 WL 4108084, at *3-*4 If Claimant believes she is now disabled based on a later-acquired impairment subsequent to the ALJ's decision, "[Claimant's] remedy is to file a new application." *Adams v. Barnhart*, No. 1:05-CV-291, 2006 U.S. Dist. LEXIS 96822, at *26, 2006 WL 6142859, at *9 (W.D.N.C. Aug. 21, 2006) (quoting *Bowles v. Barnhart*, 392 F. Supp. 2d 738, 745-46 (W.D.Va. 2005)); *see also Wilmer v. Astrue*, No. 6:07-CV-0002, 2008 U.S. Dist. LEXIS 1664, at *17, 2008

WL 112045, at *6 (W.D. Va. Jan. 8, 2008) (stating if claimant "is of the view that he is now disabled based on deterioration after the ALJ's . . . decision . . . , his remedy is to file a new application under the regulations applicable for such applications") (citing 20 C.F.R. §§ 404.620(a)(2), 416.330(b)).

## II. The ALJ properly assessed Claimant's credibility.

Claimant argues that the ALJ improperly evaluated her credibility. Pl.'s Mem. at 13. This Court disagrees.

Federal regulations, 20 C.F.R. §§ 404.1529(a) and 416.929(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See Craig*, 76 F.3d at 595-96.

12

Despite Claimant's argument to the contrary, the ALJ followed the analysis outlined in *Craig* as prescribed. First, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to produce some of Claimant's alleged symptoms. (R. 24). In so finding, the ALJ summarized at length medical records between July 2004 and October 2007, noting the evidence revealed that Claimant had been treated for cervical degenerative disc disease, lumbar degenerative disc disease, depression, carpal tunnel syndrome, fibromyalgia and osteoarthritis of the knees. (R. 20). With respect to physical impairments, the ALJ discussed the following: (1) 28 March 2006 MRI which revealed mild cervical spondylosis but no neural impingement at any level (R. 497); (2) May 2006 progress note from Scot Reeg, M.D., of the Center for Scoliosis & Spinal Surgery, noting Claimant had difficulty walking on her heels and toes and that recent MRIs indicated no finding warranting operative intervention (R. 492-93); (3) 5 June 2006 progress note from ECU Physicians indicating Claimant had good range of motion in all extremities except the right upper extremity and noting Claimant suffered from chronic low back pain with normal MRI, neck pain with mild degenerative disc disease, chronic right arm pain, osteoarthritis of the knees and positive antinuclear antibody test without any symptoms or signs of lupus (R. 536-39); (4) EMG and nerve conduction studies of the upper and lower extremities performed in August 2006 which were normal except for mild carpal tunnel syndrome (R. 567-68); (5) 6 March 2007 progress note from ECU Physicians indicating Claimant's musculoskeletal examination was within normal limits with normal range of motion and strength and noting that Claimant suffered from "no diagnosis [regarding her pain] that would qualify her for disability" (R. 585, 594); (6) 29 May 2007 progress note from ECU Physicians indicating diagnoses of osteoarthritis of the knees, neck pain with degenerative disc

13

disease and lower back pain (R. 635); and (7) 3 October 2007 progress note from ECU Physicians assessing Claimant with fibromyalgia in addition to osteoarthritis of the knees, neck pain with degenerative disc disease and low back pain (R. 685). (R. 21). With respect to Claimant's mental impairments, the ALJ summarized numerous progress notes from Dr. Attiah, Claimant's treating psychiatrist, the details of which are discussed above. (R. 21-22, 505-35, 577-84, 596-99, 609-17, 641-77).

Moreover, pursuant to S.S.R. 96-7p, the ALJ noted the following: (1) Claimant's testimony of limited daily activities which include making the bed, shopping for groceries and attending church; (2) Claimant's complaints of neck, back, knee and right side pain since 2001 and Claimant's complaints of poor sleep, memory problems and a feeling of worthlessness; (3) Claimant's testimony as to her exertional limitations due to her chronic pain; (4) Claimant's use of Wellbutrin, Remeron and Paxil for her depression and spinal injections for back pain; (5) Claimant's physical therapy visits and use of traction, heat therapy and a TENS unit; and (6) Claimant's use of a cane and a back brace, neck brace and wrist brace. (R. 24). The ALJ noted further "the reports of inconsistent findings upon examination", "claimant's doctor's refusal" to complete disability papers on Claimant's behalf, *see e.g.*, (R. 585, 594, 693) and "multiple indications of non-compliance with treatment recommendations," *see e.g.*, (R. 511, 659, 625, 627, 671, 686, 713, 716, 720), "which suggest[] the claimant's symptoms are not as severe as alleged." (R. 24). Finally, the ALJ noted that "[w]ritten evidence concerning the claimant's activities of daily living reveal that despite her allegations of limitations, she is able to engage in a variety of daily activities . . . ." (R. 24, 354-58, 362-65).

14

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion (R. 484-91), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 24). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's credibility argument is without merit.

**III. The ALJ properly assessed Claimant's RFC.**

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 10. In particular, Claimant contends the ALJ "did not give an indication as to which impairments, if any, he used in evaluating Claimant's RFC" and ALJ failed to "discuss what factors were used to determine [Claimant's] RFC." *Id.* Claimant contends further that the ALJ "erred in not considering the full record and all of [Claimant's] physical and mental impairments and limitations together, including [Claimant's] major depression and her right carpal tunnel syndrome, when making his decision that [Claimant] was capable of doing light work." *Id.* at 13. This Court disagrees.

15

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at \*1. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at \*5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at \*7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's complaints of pain in her neck, back, knees and right side and her

16

treatment for cervical and lumber degenerative disc disease, carpal tunnel syndrome, fibromyalgia, osteoarthritis of the knees, depression and anxiety. (R. 20-22, 24).

Furthermore, the ALJ's decision indicates that he considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform light work. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. (R. 20-22). While Claimant faults the ALJ for not including a restriction limiting the use of Claimant's dominant extremity to "occasional use" as a result of carpal tunnel syndrome, Claimant provides no evidence warranting such a restriction. The evidence before the ALJ provided no restrictions regarding the use of Claimant's right arm or wrist. (R. 566-67, 576). Moreover, the additional evidence presented to the Appeals Council indicates Claimant's symptoms of pain, numbness and tingling associated with carpal tunnel syndrome "have resolved almost completely" following carpal tunnel release on 5 June 2008 and that Claimant may engage in "[a]ctivities as tolerated." Claimant's contention that the ALJ did not consider Claimant's major depression when formulating Claimant's RFC merits little discussion as the RFC specifically includes a limitation to "simple, routine, repetitive tasks in a non-production environment." (R. 23). The ALJ's decision reflects due consideration of Claimant's mental impairment and its impact on her ability to work and is in accord with the findings of the state agency non-examining consultant. (R. 481, 483).

In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not

accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence).

For example, while a state agency non-examining consultant found Claimant had the RFC to

perform medium work, the ALJ, giving Claimant "every benefit of the doubt," found Claimant

capable of performing light and sedentary work only. (R. 24-25, 485). Also, the ALJ's review of

Claimant's medical impairments includes substantive findings by Viswanathan Swaminathan,

M.D., and Gregory Jones, M.D., state agency examining consultants, and given the lack of

evidence contradicting those findings, the ALJ properly relied on their medical opinions in

determining Claimant's work-related capacity. (R. 20, 444-50).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported

by substantial evidence. The ALJ's opinion demonstrates a thorough review of Claimant's

medical history and a detailed account of Claimant's claims concerning her impairments. The

ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the

correct legal standards in evaluating Claimant's RFC and no objective medical evidence from

Claimant's treating physicians contradicts the ALJ's recommendation. Accordingly, Claimant's

argument as to this issue is without merit.

**IV.     The hypothetical posed to the VE was proper.**

Claimant contends the ALJ committed error by improperly relying on VE testimony.

Pl.'s Mem. at 16.     Specifically, Claimant argues that the hypothetical posed to the VE did not

adequately reflect Claimant's RFC in that it did not include restrictions regarding Claimant's

severe carpal tunnel and major depression . . . ." *Id.* at 17.

The purpose of a VE is "to assist the ALJ in determining whether there is work available

in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d

18

47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical and mental impairments. (R. 49-50); *see Walker*, 889 F.2d at 50. The Court notes that, contrary to Claimant's contention, the hypothetical relied upon by the ALJ specifically included a limitation to simple, routine, repetitive tasks in a non-production work environment - a limitation attributed to Claimant's mental impairment. (R. 23, 49). While Claimant contends that the ALJ should have included additional limitations in the hypothetical, the ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence, as discussed above. Accordingly, Claimant's argument as to this issue is without merit.

19

**V. The ALJ properly developed the record.**

Claimant contends the case should be remanded because "it appears from the record that [the ALJ] wanted to order some additional testing." Pl.'s Mem. at 18. In support of this assertion, Claimant refers to page 50 of the administrative transcript, where during the course of the administrative hearing, the transcript indicates that the ALJ stated, "If you [i.e., Claimant's counsel] don't have any further questions, then let me schedule." *Id.* Claimant contends further that "there may be some portion of the transcript missing from page 50" and the case should be remanded "to clear up the record." *Id.* at 19.

In this case, the Court finds that documentation as presented in the administrative record was sufficient to allow the ALJ to make an informed decision. The administrative transcript indicates that the ALJ received additional documentation into evidence during the hearing and elicited information from Claimant about her age, education, past work, impairments, medical treatment and daily activities. (R. 38-46). The transcript indicates further that both the ALJ and Claimant's counsel posited hypothetical questions to the VE based on Claimant's testimony. (R. 48-51). Finally, the transcript indicates a closing argument provided by Claimant's counsel. (R. 51-52).

As Claimant has acknowledged, "[t]here is no indication what [the ALJ] was trying to get scheduled and there is no evidence in the record that anything was scheduled for [Claimant]." Pl.'s Mem. at 18-19. The Court notes further that Claimant's representative had the opportunity to specifically question the ALJ regarding the scheduling statement during the administrative hearing but failed to do so. *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled

20

to assume that the applicant is making his strongest case for benefits.") (*quoting Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). Rather, Claimant's counsel seemingly disregarded the ALJ's statement and questioned the VE about the impact of further limitations on Claimant's ability to work. (R. 50-51).

As outlined above, all medical records were fairly reviewed and considered by the ALJ, including numerous progress reports from ECU Physicians concerning Claimant's physical and mental impairments, two consultative examinations, a mental RFC and two physical RFC assessments. (R. 20-22, 24). The ALJ has cited this evidence in his decision in support of his non-disability finding. The ALJ had before him sufficient facts to determine the central issue of disability and properly relied on these facts in assessing Claimant's RFC, credibility and determining whether other work existed that Claimant could perform. Thus, Claimant's last assignment of error is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

21

This, the 22nd day of April, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge